UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIELLE MARIE DEGROAT,

                            *Plaintiff*,

    v.

SULLIVAN COUNTY, SULLIVAN
COUNTY ADULT CARE CENTER, *and*
SUSAN SOUTHERTON,

                            *Defendants*.

No. 23-CV-2066 (KMK)

ORDER & OPINION

Appearances:

Jessenia Maldonado, Esq.
Olivia Marie Clancy, Esq.
Shegerian & Associates
New York, NY
*Counsel for Plaintiff*

Khalid Bashjawish, Esq.
Sullivan County Office of the County Attorney
Monticello, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Danielle Marie DeGroat ("DeGroat" or "Plaintiff") brings this Action against Sullivan

County (the "County"), Sullivan County Adult Care Center ("SCACC"), and Susan Southerton

("Southerton") (collectively, "Defendants"), alleging discrimination and retaliation on the basis

of race and disability, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended, 42 U.S.C. §§ 2000e, et seq., 42 U.S.C § 1981 ("Section 1981"), 42 U.S.C. § 1983

("Section 1983"), the Americans with Disability Act (the "ADA"), 42 U.S.C. §§ 12132, et seq.,

and the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, et

seq. (*See generally* Compl. (Dkt. No. 1).)[1]  Before the Court is Defendants' Motion for

Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 40).)  For the reasons discussed

below, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Defendant's 56.1 ("Defs' 56.1") (Dkt. No. 40-1),

Plaintiff's Counter 56.1 Statement ("Pl's Counter 56.1") (Dkt. No. 43), and admissible evidence

submitted by the Parties.  The facts are recounted "in the light most favorable to" Plaintiff, the

non-movant.  *Torcivia v. Suffolk County*, 17 F.4th 342, 345 (2d Cir. 2021).  The facts as

described below are in dispute only to the extent indicated.[2]

---

[1] Defendants argue that the Court must dismiss SCACC "because it is not a separate legal entity from the County."  (Defs' Mem. in Supp. ("Defs' Mem.") (Dkt. No. 40-2) 7.)  Plaintiff does not respond to this argument.  (*See generally* Pl's Mem. in Opp. ("Pl's Opp.") (Dkt. No. 41).)  Defendants are correct that divisions of municipal governments are not considered separate legal entities and so may not be sued.  *See Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *3 (S.D.N.Y. May 23, 2023) ("Under New York law, municipal agencies or departments do not have the capacity to be sued." (citations omitted)).  Defendants "represent that [SCACC] is an administrative arm of the County, and [P]laintiff does not dispute this."  *Id.*  Accordingly, "[b]ecause [SCACC] does not have its own legal identity, all of Plaintiff's claims against [SCACC] are dismissed with prejudice."  *Cruz v. Southerton*, No. 21-CV-6410, 2023 WL 8810144, at *3 (S.D.N.Y. Dec. 20, 2023) (dismissing SCACC as a defendant because it is not a legal entity separate from the County); *see also Snowden*, 2023 WL 3601654, at *3 (same).

[2] The Court notes that Plaintiff's Opposition brief lays out "material facts" by citing almost exclusively to the Complaint.  (*See* Pl's Opp. at ECF 5–8.)  But "the complaint 'is not evidence with which a party can oppose a motion for summary judgment.'"  *Brockington v. Dollar Gen. Corp.*, No. 22-CV-6666, 2025 WL 486173, at *1 n.1 (S.D.N.Y. Feb. 13, 2025) (quoting *Henek v. CSC Holdings, LLC*, 449 F. Supp. 3d 35, 38 n.2 (E.D.N.Y. 2020) (collecting cases)); *see also Bentivegna v. People's United Bank*, No. 14-CV-599, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017) ("[A]n unverified complaint is not admissible evidence.").  "The Court is therefore free to disregard these unsupported assertions."  *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *1 n.2 (S.D.N.Y. Sept. 9, 2024) (quoting *Lax v. City Univ. of N.Y.*, No. 16-CV-799, 2020 WL 6161253, at *1 n.1 (E.D.N.Y. Oct. 21, 2020) (explaining that the defendants' reliance on allegations in the amended complaint in their Rule 56.1 statement

On April 24, 2019, the County hired Plaintiff, a Black woman, to work as a certified nursing assistant ("CNA") at SCACC in Liberty, New York.  (Defs' 56.1 ¶ 1.)  At the time of her employment, Plaintiff was a member of the International Brotherhood of Teamsters, Local Union 445 (the "Union").  (*Id.* ¶ 2.)  On August 4, 2020, Plaintiff was examined by Dr. Jeffrey H. Newton, M.D., ("Dr. Newton"), "to obtain an independent medical assessment of her psychiatric status as it bears on her fitness for duty as a certified nursing assistant for [SCACC]."  (Decl of Khalid Bashjawish ("Bashjawish Decl."), Ex. H (Dkt. No. 40-11) at 1.)  Dr. Newton produced a report dated August 7, 2020, noting that "DeGroat said she has been diagnosed as having bipolar disorder."  (*Id.*; *see also id.* 3 ("Diagnosis:  Bipolar disorder (by history), appearing to be well managed with competent treatment.").)  Dr. Newton's report bears a stamp that appears to indicate it was received by the County's Personnel Department on August 14, 2020.  (*See id.* 1.)

Defendants assert that Plaintiff resigned from her position in August 2020, (*see* Defs' 56.1 ¶ 3), but Plaintiff characterizes her departure as a firing, (*see* Pl's Counter 56.1 ¶ 3; Decl. of Olivia M. Clancy ("Clancy Decl."), Ex. B ("Pl. Dep. Tr.") (Dkt. No. 42-2) at 4:8–13).  Defendants point to a settlement agreement executed in April 2021 between Plaintiff, the Union, and the County that provides that "DeGroat was deemed to have resigned her position as of August 20, 2020, due to an unauthorized leave of absence."  (Bashjawish Decl., Ex. B ("Settlement Agreement") (Dkt. No. 40-5) at 1.)  The Settlement Agreement also provides that Plaintiff and the Union disagreed with "the County's determination that [Plaintiff] had resigned."  (*Id.*)  Plaintiff was notified of her termination on September 10, 2020, and, in response, the

---

amounted to "an improper attempt to convert allegations from [the p]laintiff's unverified complaint into evidence"), *aff'd*, No. 20-3906, 2022 WL 103315 (2d Cir. Jan. 11, 2022) (summary order).

Union filed a disagreement on October 2, 2020, pursuant to the collective bargaining agreement between the County and Union.  (*See id.*)  The County and Union engaged in arbitration beginning in January 2021, which culminated in the Settlement Agreement.  (*See generally id.*)

In April 2022, Plaintiff was rehired to the same position and was again a member of the Union.  (Defs' 56.1 ¶ 6.)  Plaintiff alleges that during her second term of employment at SCACC she was discriminated against by her not being allowed to take her lunch break with her boyfriend, Murisio Estrada Drake, who also was a SCACC employee, while other white CNAs were "in the laundry room having sex with each other."  (Pl. Dep. Tr. at 9:18–10:21; *see also id.* at 33:3–13.)  Plaintiff asserts that white CNAs were permitted to dress "anyway they wanted" and could "skip [residents'] showers, [and] teeth brushing" while Plaintiff "was harassed because [she] forgot to wash [her] hands."  (*Id.* at 34:13–25.)  Plaintiff also asserts that white CNAs would call out with unauthorized absences.  (*Id.* at 35:7–16.)  On September 16, 2022, Cynthia Hathaway ("Hathaway"), Plaintiff's supervisor, issued a warning to Plaintiff concerning absenteeism.  (Defs' 56.1 ¶ 7; Bashjawish Decl., Ex. D (Dkt. No. 40-7).)

The Parties dispute whether Plaintiff continued to have unauthorized absences in October 2022.  (*Compare* Defs' 56.1 ¶ 8, *with* Pl's Counter 56.1 ¶ 8.)  Plaintiff asserts that, at some point, she informed SCACC that she was planning to take vacation around Columbus Day in October 2022.  (*See* Pl. Dep. Tr. at 12:3–18.)  Plaintiff also asserts that she cannot remember if she had "approved time," but that "[SCACC] gave [her] time off to go" because her schedule had "[s]ome spaces . . . blanked out," which "means [she] did not have to work."  (*Id.* at 13:14–22; *see also id.* at 20:6–11 (testifying that Plaintiff "had gotten approval from Rachel Hadley").) Plaintiff also asserts that she was "never told [she] had to fill out a form" to request vacation time.  (*Id.* at 14:8–15.)  Plaintiff returned from her vacation at an unspecified date, then "tried to

4

call out because [she] wasn't feeling well." (*Id.* at 17:4–9.)  Plaintiff left multiple messages via phone, but did not send any emails because she did not have Hathaway's email and SCACC scheduler Jason Conroy "doesn't answer [emails]." (*See id* at 17:10–21; Clancy Decl., Ex. D ("Diescher Dep. Tr.") (Dkt. No. 42-4) at 41:14–20 (indicating that Jason Conroy served as "scheduler").)  By letter dated October 18, 2022, Hathaway informed Plaintiff that, "according to [SCACC] records, you have been absence [sic] from work without authorization since October 14, 2022," and that Plaintiff was deemed to have resigned effective October 10, 2022.  (*See* Bashjawish Decl., Ex. F (Dkt. No. 40-9).)[3]  Plaintiff again contends that she was fired.  (*See* Pl's Counter 56.1 ¶ 9.)

On November 3, 2022, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging discrimination and retaliation on the basis of race, disability, and pregnancy.  (*See* Compl., Ex. A ("EEOC Charge") (Dkt. No. 1-1).)  By letter dated December 28, 2022, Plaintiff received her right to sue.  (*See* Compl., Ex. B (Dkt. No. 1-2).)

B.  Procedural Background

On March 10, 2023, Plaintiff initiated this Action.  (*See* Compl.)  On February 5, 2024, the Court entered a case management and scheduling order.  (*See* Dkt. No. 22.)  On September 10, 2024, the Court set a briefing schedule for the instant Motion.  (*See* Dkt., minute entry dated

---

[3] An undated memorandum of understanding between the Union and the County provides:

> Any employee employed at the Nursing Home who is absent from work without authorization for two (2) consecutive calendar days or an employee who fails to report back to work after two (2) days at the end of the approved leave will be deemed to have resigned from his or her position if the employee has not personally contacted the employee's department head or the department head's designee on or before the third (3rd) calendar day following the commencement of such period of absence without authorization.

(Bashjawish Decl., Ex. G (Dkt. No. 40-10) § 1.)

Sept. 10, 2024.)  On November 12, 2024, Defendants filed the Motion.  (*See* Defs' Mem.; Defs'
56.1.)  On December 12, 2024, Plaintiff filed her Opposition.  (*See* Pl's Opp.; Pl's Counter 56.1.)
On December 26, 2024, Defendants filed their Reply.  (*See* Defs' Reply Mem. in Supp. ("Defs'
Reply") (Dkt. No. 44).)

<u>II.  Discussion</u>

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v.
John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to
award summary judgment, the court must construe the record evidence in the light most
favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v.
Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232,
240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute
exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also
Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4
(S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it
ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an
essential element of the non[-]movant's claim," in which case "the non[-]moving party must
come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order
to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d
114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive

a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

If "any portion of an affidavit [is] not based on personal knowledge[, it] should be stricken." *Gemological Inst. of Am., Inc. v. Zarian Co.*, 349 F. Supp. 2d 692, 697 (S.D.N.Y. 2004) (quoting *Larouche v. Webster*, 175 F.R.D. 452, 454–55 (S.D.N.Y. 1996)); *see also Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 131 n.12 (2d Cir. 2004) (noting that the district court was free to disregard hearsay statements and speculation in affidavits); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"). As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"). However:

> [W]here the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys*, 426 F.3d at 554 (citation omitted).

"[W]here [there is] nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [plaintiff's complaint]," the court may grant defendants' motion for summary judgment.  *Roland v. City of New York*, No. 20-CV-5392, 2024 WL 2832691, at *20 (S.D.N.Y. June 3, 2024) (citing *Jeffreys*, 426 F.3d at 554).  *Jeffreys*, however, is inapposite where a plaintiff's "testimony [is] consistent and uncomplicated."  *See Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019).  In other words, a plaintiff's consistent, uncomplicated, and not "wholly improbable" testimony "may be independently sufficient to raise a genuine issue of material fact."  *Id.* (citing *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)); *see also Lara v. Port Auth.*, No. 20-CV-10383, 2023 WL 2185853, at *5–6 (S.D.N.Y. Feb. 23, 2023) (finding that plaintiff's testimony, "[w]hile admittedly lacking specificity and rather thin," was nonetheless sufficient to defeat defendant's motion for summary judgment); *Drayton v. City of New York*, No. 17-CV-7091, 2021 WL 1163108, at *2–3 (E.D.N.Y. Mar. 26, 2021) (denying a motion for reconsideration of the court's earlier ruling that plaintiff's deposition testimony raised a triable issue of fact that survived summary judgment).

However, "[a]lthough witness credibility is usually a question of fact for the jury, 'broad, conclusory attacks on the credibility of a witness will not, by themselves, present question of material fact' for trial."  *Desia v. GE Life & Annuity Assurance Co.*, 350 F. App'x 542, 544 (2d Cir. 2009) (summary order) (citation and alteration omitted) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general

attacks upon the defendant's credibility." (alterations omitted) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998))), *aff'd*, 367 F. App'x 178 (2d Cir. 2010).

As such, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (citation and alterations omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

## B. Title VII, NYSHRL, and Section 1981

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Chambers v. District of Columbia*, 35 F.4th 870, 882 (D.C. Cir. 2022) (Walker, J., concurring in part)).[4]

---

[4] "Before bringing a suit for employment discrimination in federal court, a plaintiff must first timely file a discrimination charge with the EEOC." *Montana v. City of Mount Vernon*, No. 21-CV-260, 2023 WL 8097039, at *7 (S.D.N.Y. Nov. 21, 2023). To be timely, a claim for discrimination under Title VII must be filed with the EEOC within 300 days "after the alleged

Title VII claims are evaluated under "the three-step burden shifting analysis of" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400–01 (2d Cir. 1998)).[5] To establish a prima facie case of discrimination, a plaintiff must show: "(1) she was within [a] protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Streichert v. Town of Chester*, No. 19-CV-7133, 2022 WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022) (internal quotation marks and citation omitted); *see also Chudnovsky v. Prudential Sec. Inc.*, No. 98-CV-7753, 2000 WL 1576876, at *7 (S.D.N.Y. Oct. 23, 2000) (same). The burden at this stage is minimal, but "a plaintiff must proffer some

_____

unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 161 (E.D.N.Y. 2020) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999) (per curiam)); *see also Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, No. 20-CV-337, 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9, 2022) (noting that New York's "State Division of Human Rights makes New York a . . . deferral state for Title VII purposes," and therefore, discrimination claims must be filed with the EEOC within 300 days of when the employee knew of should have known of the alleged adverse employment action (internal quotation marks and citation omitted)). The Court notes that Plaintiff appears to have filed an EEOC Charge and received a right-to-sue notice. (*See* EEOC Charge; Compl., Ex. B.) Defendants do not move for summary judgment on this ground or otherwise mention Plaintiff's EEOC Charge. (*See generally* Defs' Mem.; Defs' Reply.)

[5] The "familiar and straightforward" *McDonnell Douglas* framework also governs discrimination and retaliation claims under the NYSHRL and Section 1981. *Gonzalez v. Sutton Park Ctr. for Nursing & Rehab.*, No. 23-CV-8788, 2025 WL 920607, at *6 (S.D.N.Y. Mar. 26, 2025); *see Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023) (noting that retaliation claims under Title VII, the ADEA, and Section 1981 are subject to the *McDonnell Douglas* analysis).

"[A] Section 1981 plaintiff has the burden of showing, at every stage of the proceedings, that the plaintiff's race was a 'but for' cause of any alleged injury." *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-CV-7408, 2025 WL 863572, at *16 (S.D.N.Y. Mar. 18, 2025) (quoting *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 589 U.S. 327, 333 (2020)).

admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." *Risco v. McHugh*, 868 F. Supp. 2d 75, 98–99 (S.D.N.Y. 2012) (citing *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x. 55 (2d Cir. 2002)); *see also Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) ("The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." (internal quotation marks and citation omitted)).

If the plaintiff sufficiently makes a prima facie case, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. If the employer satisfie[s] its burden, the plaintiff must then show that the reasons presented was a pretext for discrimination." *Halkitis v. N.Y.C. Dep't of Educ.*, No. 19-CV-11753, 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022) (quoting *DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020)); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) ("[T]he final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination."). The final step of the *McDonnell Douglas* framework requires the Court to examine the entire record—including evidence from the plaintiff's prima facie case, additional evidence suggesting pretext, and other evidence of the defendant's discriminatory or retaliatory intent—and "determine whether the plaintiff could satisfy [her] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated" against her. *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981) (explaining that the plaintiff's third-step burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination"). "Whether judgment as a matter of law is appropriate in any particular case will

depend on a number of factors," including the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false," and any other properly considered evidence that supports the employer's case.  *Parlato v. Town of East Haven*, No. 22-CV-1094, 2024 WL 4894572, at *5 (D. Conn. Nov. 26, 2024) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148–49 (2000)).

The Second Circuit has stated repeatedly that "an extra measure of caution is merited before granting . . . summary judgment in a discrimination action because direct evidence of discriminatory intent is rare."  *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024) (quotation marks omitted); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (emphasizing "the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008))).  Because discriminatory intent is "elusive" in nature, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015), "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination," *Banks*, 81 F.4th at 259 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).  That said, a plaintiff's "'reliance upon conclusory statements or mere allegations' will not suffice to defeat summary judgment."  *Moll*, 94 F.4th at 228 (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)).  Thus, summary judgment remains proper when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* (quoting

*Celotex*, 477 U.S. at 322–23).  As the same approach applies to claims under Title VII,

NYSHRL, and Section 1981, the Court evaluates the substance of those claims concurrently.[6]

C.  Analysis

Plaintiff asserts claims for Title VII race discrimination (Claim One), Title VII retaliation

(Claim Two), NYSHRL race discrimination (Claim Three), NYSHRL retaliation (Claim Four),

Section 1983 municipal liability (Claim Five), NYSHRL aiding and abetting against Southerton

(Claim Six), ADA failure to accommodate and retaliation (Claim Seven), and NYSHRL

disability discrimination (Claim Eight).  (*See* Compl. ¶¶ 45–102.)  Defendants move for

summary judgment on all claims.[7]

1.  Title VII and NYSHRL Discrimination (Claims One and Three)

Defendants do not address whether Plaintiff has made a prima facie case; rather, they

contend they have a nondiscriminatory reason for terminating Plaintiff and that Plaintiff has not

---

[6] In discrimination cases under the NYSHRL and Title VII, courts may apply a "mixed motive" analysis at the third stage of the *McDonnell Douglas* framework.  "[A] plaintiff may make either a traditional showing of 'pretext'—i.e., that the employer's stated reason was false, and that the sole actual reason was discrimination—or a showing that even if the employer's reason is true, discrimination was still a motivating factor in the employment decision."  *Bart v. Golub Corp.*, 96 F.4th 566, 573–74 (2d Cir. 2024) (emphasis in original).  The mixed-motive analysis does not apply to Title VII retaliation claims.  *See Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *13 n.19 (S.D.N.Y. Sept. 23, 2024).

[7] The Court notes that while the Complaint and Plaintiff's Opposition state that claims in this Action are brought pursuant to Section 1981, (*see* Compl. ¶ 7; Pl's Opp. at ECF 5), these passing statements are Plaintiff's only references to Section 1981.  Courts regularly dismiss Section 1981 discrimination and retaliation claims upon finding that identical Title VII discrimination and retaliation claims must also be dismissed.  *See Oliver Cyrus v. Lockheed Martin Corp.*, No. 22-CV-4115, 2025 WL 964016, at *6 (E.D.N.Y. Mar. 31, 2025) (collecting cases).  As discussed below, the Court finds that summary judgment is warranted on Plaintiff's Title VII and NYSHRL claims.  Accordingly, to the extent Plaintiff's discrimination and retaliation claims are brought under Section 1981, they are dismissed for the reasons stated below.

adduced any evidence that the reason was pretextual.  (*See* Defs' Mem. 3–4.)[8]  Defendants assert

that Plaintiff was terminated in October 2022 "due to her unauthorized absences."  (Defs' 56.1

¶ 9.)  Plaintiff does not directly address the pretext issue.  (*See* Pl's Opp. at ECF 10–12.)  By

failing to respond, Plaintiff has effectively conceded that Defendants' legitimate, non-

discriminatory reason was not pretext for discrimination.  *See Cardoso v. Wells Fargo Bank,*

*N.A.*, No. 21-CV-8189, 2022 WL 4368109, at *9 (S.D.N.Y. Sept. 20, 2022) ("The plaintiff's

opposing memorandum of law does not respond to th[ese] argument[s], and effectively concedes

[them] by his failure to respond to them." (alterations adopted) (citation omitted)); *Di Pompo v.*

*Mendelson*, No. 21-CV-1340, 2022 WL 463317, at *2 (S.D.N.Y. Feb. 15, 2022) ("A plaintiff

effectively concedes a defendant's arguments by his failure to respond to them." (quoting *Felske*

*v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012))), *on*

*reconsideration in part*, 2022 WL 1093500 (S.D.N.Y. Apr. 7, 2022).  Even putting aside

Plaintiff's failure to respond, the Court concludes that no factfinder could find that Plaintiff has

carried her burden in showing that Defendants' justification is a pretext for race discrimination.

Defendants point to a memorandum of understanding between the Union and the County

providing that an employee's two-day absence without contacting a supervisor results in the

employee being deemed to have resigned.  (*See* Defs' 56.1 ¶ 10; Bashjawish Decl., Ex. G.)

Defendants contend that this policy supports SCACC's decision to terminate Plaintiff.  (*See*

Defs' Mem. 3–4; Bashjawish Decl., Ex. E (Dkt. No. 40-8) (a timesheet indicating that Plaintiff

---

[8] Defendants repeatedly make the argument that a Settlement Agreement signed by
Plaintiff releases any claims that rest on factual circumstances that took place before April 2021.
(*See* Defs' Mem. 5, 7.)  The Court acknowledges this argument, but, as discussed below,
Defendants are entitled to summary judgment on grounds wholly apart from the Settlement
Agreement's release provision.

was absent for more than two days).)  Defendants have therefore provided a legitimate, nondiscriminatory reason for Plaintiff's termination.  *See Davis v. Merck & Co.*, No. 22-CV-9501, 2025 WL 343510, at *5 (S.D.N.Y. Jan. 29, 2025) ("It is well settled that 'violations of employer policy are legitimate, nondiscriminatory reasons for adverse actions.'" (quoting *Smith v. N.Y. Presbyterian Hosp.*, 440 F. Supp. 3d 303, 335 (S.D.N.Y. 2020))); *Snowden*, 2024 WL 4882700, at *5 (same).

The burden now shifts to Plaintiff to argue that Defendants' reason is pretextual.  As mentioned above, Plaintiff fails to address this point in her brief.  The Court's independent review of the record reveals that there is no evidence, documentary or testimonial, connecting Plaintiff's termination with racial discrimination.  While "[i]t is true that '[a] showing that similarly situated employees' outside the protected group 'received more favorable treatment' can be evidence that the employer's proffered reason is pretextual," Plaintiff "must present evidence from which a reasonable factfinder could conclude that the comparator employees were indeed 'similarly situated in all material respects.'"  *Flanagan v. Trader Joe's E., Inc.*, No. 24-CV-675, 2025 WL 18151, at *2 (2d Cir. Jan. 2, 2025) (summary order) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39–43 (2d Cir. 2000)).  Plaintiff testified that white CNAs were "calling out with unauthorized absences."  (Pl. Dep. Tr. at 35:7–16.)  But she does not mention at all whether those white CNAs received a warning, as Plaintiff did, (Defs' 56.1 ¶ 7), or provide *any* other evidence about those comparators.  Indeed, outside of Plaintiff's testimony, the record contains absolutely no evidence about these comparators.  Neither is there any evidence offered by Plaintiff that SCACC "had mixed motives, [and] [Plaintiff's] membership in a protected class was at least one motivating factor in the employer's adverse action."  *Carter v. TD Bank, N.A.*, No. 23-CV-950, 2024 WL 2828470, at *1 (2d Cir. June 4, 2024) (quoting *Bart*, 96 F.4th at 578).

This is fatal to Plaintiff's claims of racial discrimination. *See Flanagan*, 2025 WL 18151, at *2 (noting that the circumstances surrounding the "similarly situated" employees "need not be identical [to the plaintiff's], but there should be a reasonably close resemblance of facts and circumstances" (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001))). Accordingly, because Plaintiff has failed to rebut Defendants' nondiscriminatory reason for terminating her, the Motion is granted on these claims. *See Faustin v. N.Y. & Presbyterian Hosp.*, No. 23-CV-8323, 2025 WL 1755192, at *6 (S.D.N.Y. June 25, 2025) (granting summary judgment on Title VII and NYSHRL claims because plaintiff "fail[ed] to rebut [defendant's] nondiscriminatory reason for not promoting him"); *James v. Port Auth. Police Dep't*, No. 22-CV-2463, 2025 WL 966016, at *13 (S.D.N.Y. Mar. 31, 2025) (granting summary judgment on a Title VII discrimination claim "because [p]laintiff has failed to offer evidence sufficient to create a material issue of fact as to whether Defendants' alleged nondiscriminatory reason for failing to promote him is pretextual").

### 2.  Title VII and NYSHRL Retaliation (Claims Two and Four)

"Title VII forbids an employer from discriminating against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter.'" *Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *13 (S.D.N.Y. Mar. 30, 2022) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (quoting 42 U.S.C. § 2000e-3(a))).  "The NYSHRL similarly makes it unlawful for an employer to retaliate or discriminate against an employee because she 'has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified[,] or assisted in any proceeding under this

article.'" *Farmer*, 473 F. Supp. 3d at 330 (alteration in original) (quoting N.Y. Exec. Law §

296(7)). "A claim for retaliation is analyzed under the same three-part *McDonnell Douglas*

burden shifting test, but the elements of the prima facie case for retaliation differ slightly from

those for discrimination." *Gamble v. Fieldston Lodge Nursing & Rehabilitation Ctr.*, 697 F.

Supp. 3d 112, 123 (S.D.N.Y. 2023).

> To make out a prima facie case of retaliation, a plaintiff must demonstrate that
> "(1) she engaged in protected activity; (2) the employer was aware of that activity;
> (3) the employee suffered a materially adverse action; and (4) there was a causal
> connection between the protected activity and that adverse action."

*Alcy v. Northwell Health, Inc.*, No. 23-CV-88, 2025 WL 835647, at *11 (S.D.N.Y. Mar. 14,

2025) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14

(2d Cir. 2013)); *see also Farmer,* 473 F. Supp. at 330 (noting that the *McDonnell Douglas*

burden-shifting framework "govern[s] retaliation claims under" Title VII and NYSHRL).

Defendants argue that Plaintiff's allegations of retaliatory behavior are precluded by the

Settlement Agreement and assert that there are no facts in the record relating to retaliation in

relation to her second term of employment. (*See* Defs' Mem. 4–5.) Plaintiff's argument in

response is, in its entirety, the following:

> As alleged in the Complaint and testified to during her deposition, Plaintiff
> experienced swift retaliation in the form of targeting and termination after testifying
> on behalf of Ms. Snowden and against Caucasian CNAs, specifically Rachel
> Hadley, during the August 25, 2020 Hearing pertaining to Civil Charges brought
> against LaToya Snowden. Plaintiff testified refuting Defendant's pretextual
> justifications for her termination, which were being late and no call/no show
> conduct stating she was rarely late and typically on time. See Exhibit B, p. 29. The
> Caucasian CNAs did not receive the retaliatory action Plaintiff had because they
> did not speak out at the Hearing opposing racial discrimination perpetrated upon
> their colleagues of color i.e. African American and Hispanic and did not lodge
> complaints of discrimination repeatedly about Southerton.

(Pl's Opp. at ECF 13–14.)  Putting aside whether the Settlement Agreement's release provision precludes Plaintiff from raising these arguments, the Court finds that Plaintiff has failed to establish a prima facie case of retaliation.

Plaintiff asserts that her testimony at an August 2020 hearing concerning Snowden and discrimination constitutes a protected activity for the purpose of her retaliation claims.  (*See* Pl's Opp. at ECF 13.)  While testifying about workplace discrimination in a hearing can constitute a protected activity, *see Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 168 (2d Cir. 2005) ("[The Second Circuit] previously ha[s] held that an employee who offers testimony in a Title VII lawsuit squarely engages in a form of statutorily protected activity."); *Meagher v. State Univ. Constr. Fund*, No. 17-CV-903, 2020 WL 5504011, at *17 n.31 (N.D.N.Y. Sept. 11, 2020) ("Protected activities under Title VII include opposition to a discriminatory employment practice or participation in an investigation, hearing, or proceeding under Title VII." (citing *Hubbard v. Total Comm'cns, Inc.*, 347 F. App'x 679, 680–81 (2d Cir. 2009))), there is simply no admissible record evidence about this activity.  Plaintiff cites to her Complaint and deposition testimony as laying out the circumstances of the alleged protected activity.  (*See* Pl's Opp. at ECF 13.) Neither citation is helpful.  First, as noted above, an unverified complaint cannot defeat summary judgment.  *See E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *1 n.1 (S.D.N.Y. Sept. 28, 2023) ("It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment." (quoting *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023))).  The Court, therefore, cannot look to the Complaint for material facts supporting Plaintiff's prima facie case of retaliation.  Second, there are no references in Plaintiff's deposition to LaToya Snowden ("Snowden") or any incident concerning Snowden.  (*See generally* Pl. Dep. Tr.)  There are references to Snowden in the deposition

transcripts of Julie Diescher ("Diescher") and Sue Osterhout ("Osterhout"), both of whom were County employees at the relevant times, but these references are unavailing. (*See* Clancy Decl., Ex. C ("Osterhout Dep. Tr.") (Dkt. No. 42-3) at 19:20–20:4; Diescher Dep. Tr. at 16:20–25:2, 34:7–11, 62:22–63:6, 68:17–20, 70:2–4.) Diescher and Osterhout's depositions do not describe the alleged protected activity in any detail, and the only discussion of Plaintiff and Snowden together is vague and inconclusive. (*See* Diescher Dep. Tr. at 25:7–11 ("Q: Okay. Now, was Ms. Danielle DeGroat a witness or involved in this environment in the parking lot[, i.e., the incident involving Snowden,] at any point? A: I do not recall.").)

Accordingly, because Plaintiff has not established that she engaged in a protected activity, the Court grants summary judgment on these claims. *See Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 125 (2d Cir. 2024) (affirming a grant of summary judgment on Title VII and NYSHRL retaliation where plaintiff had failed to establish she engaged in a protected activity).

### 3. Municipal Liability (Claim Five)

Defendants argue there is no evidence of a "policy, custom, or practice that [led] to Plaintiff's termination." (Defs' Mem. 5.) Plaintiff's responds to this argument with one sentence: "The County has a pattern and practice of abusing its minority CNAs based on their race and in this particular case Plaintiff's disability as well as on the basis that these women endure poverty and struggle financially in an area of the state where few employment opportunities are available." (Pl's Opp. at ECF 11.) Plaintiff provides no record citations in support of this statement. Elsewhere in her brief, in a footnote, Plaintiff "refers the Court" to two other actions against the County in which the plaintiffs are represented by the same counsel as in this Action. (*See* Pl's Opp. at ECF 6 n.1.) It is unclear what Plaintiff intends to show by this

reference.  To the extent that Plaintiff asserts that the existence of other discrimination actions

against the County lends credence to Plaintiff's allegations of discrimination, this argument fails.

*See Rogers v. Miller*, No. 16-CV-3610, 2019 WL 3429767, at *8 (E.D.N.Y. July 30, 2019)

("[T]he mere fact that a number of lawsuits has [sic] been filed, without any information as to

whether the suits are meritorious or spurious, or alternatively, any evidence that the municipality

ignored such complaints does not assist a fact-finder in determining whether the Town actually

had a historical problem." (alterations adopted) (citing *Ostroski v. Town of Southold*, 443 F.

Supp. 2d 325, 346 (E.D.N.Y. 2006))).

"[T]o prevail on a claim against a municipality . . . based on acts of a public official, a

plaintiff is required to prove:  (1) actions taken under color of law; (2) deprivation of a

constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d

Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)).  "In

determining municipal liability, it is necessary to conduct a separate inquiry into whether there

exists a 'policy' or 'custom.'"  *Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *20

(S.D.N.Y. Mar. 19, 2024) (quoting *Davis v. City of New York*, 228 F. Supp. 2d 327, 336

(S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) (summary order)).  "[A] custom or policy

cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee

of the [municipality]."  *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008);

*see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)

("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under

*Monell*, unless proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Here, because Plaintiff offers no evidence in support of any element establishing *Monell* liability, the Court grants summary judgment on this claim. *See Genao v. City of New York*, No. 21-CV-303, 2023 WL 4633486, at *13 (S.D.N.Y. June 20, 2023) (granting summary judgment "because [plaintiff] has not pointed to any evidence supporting the existence of a policy or custom by the City"), *report and recommendation adopted*, 2023 WL 4625522 (S.D.N.Y. July 19, 2023); *Brock v. City of New York*, No. 15-CV-1832, 2018 WL 3579099, at *12 (S.D.N.Y. July 25, 2018) (granting summary judgment because "[plaintiff] offers no direct or circumstantial evidence of a municipal policy, custom, or practice on the part of the City").

### 4.  NYSHRL Aiding and Abetting (Claim Six)

"[I]n order for a defendant to be liable as an aider and abettor under [Section] 296(6) of the NYSHRL, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal." *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 122 (S.D.N.Y. 2022). "Where there are no successful underlying NYSHRL claims, the aiding and abetting claims fail." *Amaya v. Ballyshear LLC*, No. 17-CV-1596, 2023 WL 2815615, at *12 (E.D.N.Y. Jan. 13, 2023) (granting summary judgment on a NYSHRL aiding and abetting claim where there was no NYSHRL primary violation), *report and recommendation adopted*, 2023 WL 2596031 (E.D.N.Y. Mar. 22, 2023).

Because the Court has found that summary judgment is warranted on Plaintiff's primary NYSHRL claims, the Motion is granted on this claim. *See Koppar v. Orange Reg'l Med. Ctr.*, No. 19-CV-11288, 2022 WL 348172, at *18 (S.D.N.Y. Feb. 3, 2022) (granting summary judgment on a NYSHRL aiding and abetting claim where the court had dismissed the primary NYSHRL claims), *aff'd*, No. 22-CV-398, 2023 WL 2484650 (2d Cir. Mar. 14, 2023); *Amaya*, 2023 WL 2815615, at *12 (same).

### 5.  ADA and NYSHRL Failure to Accommodate (Claims Seven and Eight)

Defendants argue that Plaintiff has failed to provide any evidence supporting her ADA and NYSHRL failure to accommodate claims.  (*See* Defs' Mem. 6–7.)  The Court agrees.

"The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee], unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.'"  *Gill-Dratyon v. N.Y. State Educ. Dep't*, No. 23-CV-10259, 2025 WL 872997, at *10 (S.D.N.Y. Mar. 20, 2025) (quoting *Smith v. N.Y.C. Dep't of Educ.*, No. 18-CV-8545, 2019 WL 6307471, at *9 (S.D.N.Y. Nov. 25, 2019) (internal citation omitted) (quoting 42 U.S.C. § 12112(b)(5)(A))).  To state a claim for failure to accommodate under the ADA, an employee must allege that:

> (1) [s]he is a person with a disability under the meaning of the Act; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (alterations omitted) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).  "Courts apply the same standard for failure to accommodate cases under the ADA [and] . . . NYSHRL."  *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *6 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks omitted) (quoting *Lawtone-Bowles v. City of New York*, No. 17-CV-8024, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019)).

Defendant argues that Plaintiff has not met any element.  (*See* Defs' Mem. 6–7.)  Plaintiff again fails to address this argument.  (*See generally* Pl's Opp.)  Putting aside that Plaintiff has conceded the argument, the Court will address the merits.  As to the first element, Plaintiff suffers from bipolar disorder, (Defs' 56.1 ¶ 12), which is recognized as a disability under the

ADA, *see Durr v. Slator*, No. 20-CV-662, 2023 WL 8277960, at *8 (N.D.N.Y. Nov. 30, 2023).

As to the second element, Defendant does not argue that SCACC is not a covered employer, and

so the Court will assume that this element is met. As to the third element, Plaintiff adduces no

evidence that she could have performed the essential functions of her job with a reasonable

accommodation or that SCACC refused to make any accommodations. Plaintiff asserts that she

"went on to confirm under oath that she was treated differently based on her race and disability

of being bipolar by Southerton and Tompkins." (Pl's Opp. at ECF 12.) Plaintiff cites in support

pages 35 and 36 of her deposition testimony, but nowhere on these pages does anyone mention

Plaintiff's bipolar disorder. (*See* Pl. Dep. Tr. at 35–36.) In fact, there is not one mention of

bipolar disorder or any disability in Plaintiff's deposition. (*See generally id.*) "[I]t is 'not the

role of the Court to search the summary judgment record for evidence supporting a nonmovant's

opposition.'" *Chalfen v. E. Williston Union Free Sch. Dist.*, No. 19-CV-7170, 2023 WL

2674380, at *3 (E.D.N.Y. Mar. 29, 2023) (quoting *Patacca v. CSC Holdings, LLC.*, No. 16-CV-

679, 2019 WL 1676001, at *17 (E.D.N.Y. Apr. 17, 2019)). Accordingly, because Plaintiff has

failed to carry her burden in stating a claim for failure to accommodate, the Motion is granted on

these claims. *See Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010, 2019 WL 294309, at *8

(S.D.N.Y. Jan. 23, 2019) (granting summary judgment on an ADA failure to accommodate claim

where the court found that "the record does not contain sufficient evidence from which a

reasonable factfinder could conclude that [d]efendants denied [p]laintiff a reasonable

accommodation"); *Stevens v. Rite Aid Corp.*, No. 13-CV-783, 2015 WL 5602949, at *15

(N.D.N.Y. Sept. 23, 2015) (dismissing a ADA failure to accommodate claim because plaintiff

"failed to meet his burden of demonstrating that a reasonable accommodation existed"), *aff'd in

relevant part, rev'd in part*, 851 F.3d 224 (2d Cir. 2017).

6.  ADA and NYSHRL Retaliation (Claims Seven and Eight)

In order to establish a prima facie case of retaliation, "[a] [p]laintiff must show that: (1) [s]he engaged in an activity protected by the ADA; (2) [defendants were] aware of this activity; (3) [defendants] took adverse . . . action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *11 (S.D.N.Y. Mar. 27, 2023) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

As discussed above, Plaintiff has not demonstrated that she engaged in a protected activity, let alone one protected by the ADA.  Plaintiff also does not discuss her ADA retaliation claim in her Opposition brief.  (*See generally* Pl's Opp.)  Apart from the fact that she has conceded the argument, Plaintiff's failure to point to a protected activity dooms her ADA retaliation claim.  Accordingly, the Motion is granted on this claim.  *See Matthew v. JP Morgan Chase Bank, N.A.*, No. 17-CV-3594, 2024 WL 4606816, at *6 (E.D.N.Y. Oct. 28, 2024) ("Because Plaintiff does not show that she engaged in an activity protected by the ADA, her retaliation claim also fails as a matter of law."); *Woldeselassie v. Am. Eagle Airlines/Am. Airlines*, No. 12-CV-7703, 2015 WL 456679, at *8 (S.D.N.Y. Feb. 2, 2015) (granting summary judgment on an ADA retaliation claim because "[p]laintiff presents no evidence establishing that she engaged in a protected activity"), *aff'd sub nom. Woldeselassie v. Am. Eagle Airlines, Inc.*, 647 F. App'x 21 (2d Cir. 2016).

<u>III.  Conclusion</u>

For the reasons set forth above, the Motion is granted on all claims.  The Clerk of the

Court is respectfully directed to terminate the pending Motion at Dkt. No. 40, enter judgment for

Defendants, and close the case.

SO ORDERED.

Dated:    September 25, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

26